**WASHINGTON TOWNSHIP BOARD OF TRUSTEES, Appellant,**

v.

**McLAUGHLIN, Clerk of City Council, et al., Appellees.**

[Cite as *Washington Twp. Bd. of Trustees v. McLaughlin* (1997), 117 Ohio App.3d 570.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 16019.

Decided Jan. 17, 1997.

*Wanda L. Carter* and *Elizabeth M. Stanton*, for appellant.

*Richard C. Brahm*, for appellee Robert N. Farquhar petitioners' agent.

*Robert N. Farquhar*, for appellee Marilyn McLaughlin.

BROGAN, Presiding Judge.

This case arises from the proposed annexation to the city of Centerville of an 8.222–acre parcel of land located in Washington Township. On December 27, 1994, the Board of Commissioners of Montgomery County ("commissioners") approved the annexation, and the Washington Township Trustees ("trustees") then filed a petition for injunction in the common pleas court. After the injunction was denied, the trustees filed the present appeal.

In the last ten to fifteen years, Washington Township has been one of the fastest growing areas in the Miami Valley. The township has a master land use plan and a zoning code for enforcement of the plan, which safeguards surrounding property owners by providing orderly growth and protecting property values. Under the master plan, the land in the annexation area was originally zoned single-family residential, but was later zoned for offices in 1988. H.R. Investments ("H.R.") is one of the owners of the annexation parcel. H.R. wanted business rather than commercial zoning, and was also dissatisfied with certain township setback and green space requirements. As a result, H.R. filed a petition with the commissioners on June 26, 1994, asking that the property in question be annexed to Centerville. On August 15, 1994, the trustees passed a resolution opposing the annexation and authorizing counsel to appear on the township's behalf at the annexation hearing.

The commissioners held a public hearing on October 4, 1994, and took evidence from annexation proponents and opponents. After receiving the commissioners' decision approving the annexation, the trustees filed a petition for injunction with the court of common pleas, claiming the proposed annexation would adversely affect Washington Township's legal rights and interests, including tax revenues, tax base, development potential, and ability to control zoning and development in the area. The trustees also alleged error in the commissioners' findings.

A stay of further proceedings on the annexation was granted by the trial court on March 2, 1995, and the court then held a hearing solely on the issue of whether the trustees could demonstrate that the annexation would have an

adverse effect on their legal rights or interests. At this hearing, which was held on March 15, 1996, the trustees presented testimony from various township officials and a developer who owned an apartment complex across the road from the annexation property. Centerville did not present any evidence.

At the hearing, testimony indicated that the annexation property is bordered on the north by a series of single-family homes that are being developed; to the south by single-family homes; to the east by multifamily development; and to the west by the "Miller Farm," which was rezoned in 1995 from agricultural to single-family use. Washington Township does not own any property within the area to be annexed, nor does it have any contractual rights in relation to the land. At the time of the hearing, the township collected .7 mill in taxes for the annexed area, which abuts State Route 48. After annexation, the township would still collect a portion of these taxes for fire services, because it provides fire service not just to the township, but also to Centerville. However, Centerville would also collect a portion of the taxes, for roads, bridges, and police. According to the testimony, approximately $2,000 of tax revenue would be lost, given the current, mostly undeveloped state of the land. Revenues would be greater if the land were developed. If annexation occurred, the township would also lose the ability to exercise control over zoning in the annexed area.

Further testimony focused on the loss of tax base. According to a Washington Township trustee who testified, Washington Township is one of the twenty largest townships in Ohio. Unlike municipalities, townships cannot tax earned income, but must rely on revenues from property. These revenues, in turn, are used to provide services for the entire community. However, when property is annexed, the revenue source is eliminated, and the cost of providing the same level of services may increase per capita. The trustees also submitted a chart showing an escalating cost of providing services, based on current inflationary trends and estimated population growth.

Following the hearing, the trial court filed a decision and order dismissing the petition for injunction. Specifically, the court concluded that loss of tax revenue was not a sufficient basis for a finding of adverse effect. The court further found that while the trustees had presented a compelling case that loss of tax base could adversely affect the township, the trustees had failed to establish by clear and convincing evidence what the loss of the tax base would be. In particular, the court refused to accept the notion that *any* loss of tax base would constitute an adverse effect. Finally, the court also found that the loss of zoning ability in the annexation area and consequent inability to enforce zoning decisions did not adversely affect the trustees' legal rights and interests. The court did, however, continue the stay pending appeal.

On appeal, the trustees raise the following single assignment of error:

"The trial court erred in failing to find that Washington Township demonstrated that it would be adversely affected by this annexation."

I

In support of the above assignment of error, the trustees raise three primary points: (1) narrow construction of the adverse effect requirement in R.C. 709.07(D) renders meaningless a township's right of standing to contest annexation decisions; (2) a township should be considered *per se* adversely affected by annexation; and (3) we should revisit our decision in *Madison Twp. Bd. of Trustees v. Jewett* (Feb. 6, 1987), Montgomery App. No. CA–10092, unreported, 1987 WL 6250, in light of subsequent Ohio Supreme Court annexation cases. After due consideration, we reject all three arguments.

With regard to petitions for injunctions, R.C. 709.07 provides as follows:

"The petition for injunction shall be dismissed unless the court finds the petitioner has shown by clear and convincing evidence that the annexation would adversely affect the legal rights or interests of the petitioner, and that:

"(1) There was error in the proceedings before the board of county commissioners pursuant to section 709.032 or 709.033 of the Revised Code, or that the board's decision was unreasonable or unlawful; or

"(2) There was error in the findings of the board of county commissioners."

Under the statute, to avoid dismissal of a petition for injunction, a petitioner must prove, by clear and convincing evidence, both an adverse effect on its legal rights, and one of the other statutory criteria, such as error in the board's decision. *Middletown v. McGee* (1988), 39 Ohio St.3d 284, 285–286, 530 N.E.2d 902, 904. Moreover, R.C. 709.07 is also the exclusive avenue for townships to contest annexation. *In re Annexation of 311.8434 Acres of Land* (1992), 64 Ohio St.3d 581, 585, 597 N.E.2d 460, 462–463.

In assessing adverse effect, the Ohio Supreme Court has rejected a "per se" approach, and has also distinguished between standing and the showing required to avoid dismissal of an R.C. 709.07 injunction action. These conclusions are consistent with our 1987 decision in *Jewett*, but some historical explanation will help place that decision in context.

Before *Jewett*, the Supreme Court held that 1980 amendments to R.C. 709.07 allowed townships to appeal affirmative annexation decisions. However, the court also indicated in that case that the right of participation was limited to the scope outlined in R.C. Chapter 709. *In re Appeal of Bass Lake Community, Inc.* (1983), 5 Ohio St.3d 141, 5 OBR 273, 449 N.E.2d 771. In reaching this holding, the court distinguished between parties who were directly affected (like property

owners in the annexation area), and those (like townships) who had a limited right to participate. Specifically, the court stated:

"[T]he General Assembly has afforded a considerable right of appeal to those whose rights are directly affected. In contrast, the General Assembly has provided a carefully limited form of relief for other persons to oppose an annexation petition which has been granted. The General Assembly intended these other persons to contest the petition only by meeting the stiffer standards required for an injunction." 5 Ohio St.3d at 144, 5 OBR at 276, 449 N.E.2d at 774.

The court also concluded that townships did not have a right under R.C. Chapter 709 to appeal denial of annexation petitions, because such an appeal was not provided for under that chapter.

Following the *Bass Lake* decision, R.C. 505.62 was amended to grant standing to the trustees to appeal either a grant or a denial of annexation. However, the legislature made no changes which would alter *Bass Lake*'s " 'carefully limited form of relief' to allow trustees to prevail upon an R.C. 709.07 injunction without proving adverse effect to their interests." *Perry Twp. Bd. of Trustees v. Cicchinelli* (1986), 35 Ohio App.3d 173, 178, 520 N.E.2d 235, 239. Based on this logic, the court in *Cicchinelli* rejected the notion that standing should be equated with adverse effect, noting that if the legislature had intended parties to prevail in an injunction proceeding without proving any interest, it could have amended the statute to that effect. However, the legislature had not done so. 35 Ohio App.3d at 178, 520 N.E.2d at 239–240.

In 1987, we then issued our unreported decision in *Jewett*, finding that a loss of tax revenue did not adversely affect the legal rights of township trustees. In reaching this conclusion, we noted that the legislature had spoken to this issue when it provided in R.C. 709.19 for compensation for lost tax revenue after annexation. The same conclusion was also later reached by the Twelfth District in 1994, in *Franklin Twp. Bd. of Trustees v. Cristo* (Mar. 28, 1994), Butler App. No. CA93–10–198, unreported, 1994 WL 105520.

After our decision in *Jewett*, the Supreme Court decided *McGee* and concluded that adverse effect on a legal interest existed when the annexation would affect the petitioner's rights under a contract. *McGee*, 39 Ohio St.3d 284, 286, 530 N.E.2d 902, 904. Specifically, in that case, the petitioner, the city of Middletown, was obligated under a contract to service or repair water mains in the annexed territory. After annexation, the city would be required to pay a fee and obtain a permit each time it became contractually required to service the water mains. Under the circumstances, the court found this sufficient adverse effect on a legal interest and allowed the city to bring the petition for injunction.

After reviewing *McGee,* we find nothing to disturb our decision in *Jewett,* nor do we think it affects the decision in the present case. The *McGee* court did not establish a new standard, but simply noted that the impact on Middletown's contractual obligations was sufficient adverse effect on a legal interest for purposes of satisfying one of the R.C. 707.09 injunction requirements. *McGee* also emphasized Ohio's policy of encouraging annexation and the "heavy burden" on parties seeking an injunction. 39 Ohio St.3d at 285, 530 N.E.2d at 903. And notably, the court distinguished between pleading "standing" under R.C. 709.07(A) and the legal requirements which must be satisfied for an injunction under R.C. 709.07(D). 39 Ohio St.3d at 286, 530 N.E.2d at 904, fn. 1.

In a later decision, the Ohio Supreme Court again stressed the legislature's desire to promote annexation. See *In re Petition to Annex 320 Acres to S. Lebanon,* 64 Ohio St.3d 585, 596, 597 N.E.2d 463, 470 (holding that R.C. 709.07 is the exclusive remedy for challenging annexation approval). Moreover, in a case decided the same day, the Supreme Court specifically considered the amendment to R.C. 505.62 following the *Bass Lake* decision. Consistent with the previous appellate decision in *Cicchinelli,* the Supreme Court found that the amendment was technical only, *i.e.,* was intended to correct *Bass Lake* by conferring standing to appeal from both denial and allowance of petitions for injunction. However, the amendment did not change the procedure for challenging annexation decisions. *In re Annexation of 311.8434 Acres of Land,* 64 Ohio St.3d 581, 584–585, 597 N.E.2d 460, 462. In particular, the court commented:

" '[I]t is the policy of the state of Ohio to encourage annexation by municipalities of adjacent territory.' This policy would be thwarted to a great extent if township trustees were provided the broad appeal rights contained in R.C. Chapter 2506." 64 Ohio St.3d at 585, 597 N.E.2d at 462, quoting *McGee,* 39 Ohio St.3d 284, 530 N.E.2d 902.

Both before and after the above Supreme Court cases, other appellate districts in unreported decisions have refused to equate adverse effect on a legal interest with loss of tax revenues. See *In re Annexation of 18.23 Acres in Bath Twp. v. Bath Township Bd. of Trustee* (Jan. 11, 1989), Summit App. No. 13669, unreported, 1989 WL 1643; *Franklin Twp. Bd. of Trustees v. Cristo* (Mar. 28, 1994), Butler App. No. CA93–10–198, unreported, 1994 WL 105520; and *Fairfield Twp. Bd. of Trustees v. Frost* (June 22, 1995), Columbiana App. No. 95–C–3, unreported, 1995 WL 382114. The reasoning is that adverse effect on a legal interest or right is not established by impacts like loss of tax revenues, which are inevitably caused by every annexation. We agree with this reasoning. Had the legislature intended to allow potential injunctions in situations common to all annexations, it would simply have eliminated the requirement of showing an adverse effect on a legal interest.

In arguing that we adopt this lesser standard, the trustees have cited the unreported decision in *Harrison Twp. Bd. of Trustees v. Anness* (Sept. 20, 1995), Hamilton App. No. C–940271, unreported, 1995 WL 553305. However, the court in *Anness* did not rely simply on loss of tax revenue, but cited several other factors, including loss of tax base, proposed development not in conformity with surrounding township property, and increased expenses to the township based on expanded traffic to the proposed development on a township road already considered dangerous. Three of these factors are similar to those in the present case, as the trustees argued below that tax revenue and tax base would be lost as a result of the annexation. The trustees also argued that they would lose the ability to control development in the annexed area.

■ We do not find that loss of tax base, loss of zoning ability, or lost tax revenues constitute adverse effect on legal rights or interests for purposes of satisfying R.C. 709.07(D). These matters would occur in any annexation situation, and like the trial court, we refuse to adopt the position that any loss of tax base or tax revenue is *per se* an adverse legal effect. We also agree with the trial court that the evidence presented as to loss of tax base was speculative. See *McGee, supra,* 39 Ohio St.3d 284, 286, 530 N.E.2d 902, 904 (holding that "burden of clear and convincing proof cannot be satisfied by mere conjecture or speculation"). While the charts submitted by the township estimated future increases of per capita expense to maintain the same level of services, it is equally possible that the township could undergo significant commercial or business development, thus generating revenue that would actually decrease the per capita cost of service. However, a conclusion in favor of either possibility would require speculation on our part.

■ The sole distinguishing factor in *Anness* appears to be the township's increased expenses based on higher traffic flow to an already dangerous road. This factor is similar to the increased expenses Middletown would incur in *McGee* to satisfy its contractual obligations. Thus, in an appropriate case, should a township be able to show such an expense by clear and convincing evidence (not speculation), the requirement of adverse effect on a legal interest would be satisfied, and the court could then consider whether one of the remaining criteria in R.C. 709.07 had been satisfied. However, that was not the situation in the present case, as the trustees presented evidence only on loss of tax revenues, loss of tax base, and loss of ability to control zoning.

Based on the preceding analysis, we reject the argument that townships should be considered *per se* adversely affected by annexation, as the statute and case law indicate otherwise. We also reject the contention that R.C. 709.07 should be broadly construed, as the Supreme Court itself has narrowly interpreted the statute and has adopted a position encouraging annexation. As is illustrated by

the *McGee* and *Anness* cases, a narrow construction does not prevent townships from contesting annexation, but merely requires a greater showing than the kind of loss common to all annexations. Finally, we reject the invitation to reconsider the *Jewett* case, as that decision is consistent with subsequent Supreme Court authority. Accordingly, the trustees' sole assignment of error is overruled, and the decision of the trial court, dismissing the petition for injunction, is affirmed.

*Judgment affirmed.*

WOLFF and GRADY, JJ., concur.